Choisser *v.* Hargrave.

---

JOHN CHOISSER, plaintiff in error *v.* BARNEY HARGRAVE, defendant in error.

*Error to Gallatin.*

The act of 1807, of the Territory of Indiana, in relation to the indenturing and registering of negroes and mulattoes, is clearly in violation of the Ordinance of 1787, and therefore void.

The Constitution of this State confirms only those indentures of negroes and mulattoes, that were made in conformity to the act of 1807, of the Territory of Indiana; and one of the essential requisites to the validity of an indenture under that act, was, that it be made and entered into within thirty days from the time the negro or mulatto was brought into the Territory.

2ᴀ*

Choisser *v.* Hargrave.

THIS cause was heard in the Court below, at the July term, 1835, before the Hon. Alexander F. Grant.

W. J. GATEWOOD, for the plaintiff in error.

H. EDDY and J. J. ROBINSON, for the defendant in error.

WILSON, Chief Justice, delivered the opinion of the Court :

This action, for an *assault and false imprisonment,* was brought by the defendant in error, Barney Hargrave, a colored man, against John Choisser, (who claimed the defendant in error as an indentured servant,) to try his right to freedom.   Upon the trial in the Circuit Court, judgment was rendered in favor of Barney Hargrave, from which judgment Choisser has appealed. The facts in the case, as admitted by the parties, are, that Barney " was brought into the Territory of Illinois at or before 1816, but that he was not indentured or registered until the 15th day of August, 1818," when he was indentured to Willis Hargrave, who transferred him to A. G. S. Wight, and he to Choisser.   The indentures and subsequent transfers are all in point of form according to the statute of the Territory.   The only question is, whether a compliance with the forms prescribed by the statute, does, under the circumstances of this case, give to Choisser a valid title to the services of Barney, according to the tenure of the indentures. By the Ordinance of Congress for the government of the Territory North West of the Ohio, passed in 1787, it is declared, " There shall be neither slavery nor involuntary servitude in said Territory, otherwise than for the punishment of crimes, whereof the party shall have been duly convicted."   Notwithstanding the prohibition of this ordinance, an act of the Territory of Indiana, passed in 1807, and which was continued in force here, provides " That it shall and may be lawful for any person being the owner or possessor of any negroes or mulattoes, of and above the age of fifteen years, and owing service or labor as slaves in any of the States or Territories of the United States, or for any citizens of the said States or Territories purchasing the same, to bring the said negroes or mulattoes into this Territory," and " The owners or possessors of any negroes or mulattoes, as aforesaid, and bringing the same into this Territory, shall, within thirty days after such removal, go with the same before the clerk of the Court of Common Pleas of the proper county, and in presence of said clerk, &c."   The owner and the slave shall agree upon the time the slave shall serve his master, and the clerk shall record such agreement.   But if the negro shall refuse to enter into this agreement, then the master is authorized within sixty days to remove him from the Territory.   This act of the Territorial legislature, is clearly a violation of the ordinance of Congress of 1787, and consequently void.   But by the 3d section of the 6th

Article of the Constitution, it is declared, that "Each and every person who has been bound to service by contract or indenture heretofore existing and in conformity with the provisions of the same, without fraud or collusion, shall be held to a specific performance of their contracts or indentures, and such negroes or mulattoes as have been registered in conformity with the aforesaid laws, shall serve out the time appointed by said laws."

By this provision of the Constitution, it is contended that Choisser's title to Barney, as an indentured servant, is recognised and confirmed. But to sustain this position, it must appear that the Territorial statute has been complied with. The Constitution confirms only those indentures that were made in conformity to the act of 1807, and one of the essential requisites to the validity of an indenture under that act, was, that it be made and entered into within thirty days from the time the negro or mulatto was brought into the Territory. This requirement has not in the present case been complied with. It appears both from the depositions and the admissions of the parties, that Barney was brought into the Territory "at or about the year 1816, but that he was not indentured or registered until the 15th of August, 1818," thus leaving an interval of at least eighteen and a half months between the time when he was brought into the Territory, and the time when he was indentured. This circumstance is conclusive against the claim of Choisser, and no inference in favor of the regularity of the indentures can be drawn from the lapse of time, in contradiction to the admitted facts.

The judgment of the Circuit Court is therefore affirmed with costs.

*Judgment affirmed.*

*Note.* See Boon *v.* Juliet, and note at the end of the case, *Ante* 258.